IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRYAN WHITNEY,
        Plaintiff,

vs.                                             Case No.:  5:13cv347/RS/EMT

DR. JONES, et al.,
        Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Plaintiff's Third Amended Complaint filed under 28 U.S.C.

§ 1331 and Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)

(doc. 25).  Leave to proceed in forma pauperis has been granted (doc. 4).

The case was referred to the undersigned for the issuance of all preliminary orders and any

recommendations to the district court regarding dispositive matters.  See N. D. Fla. Loc. R. 72.2(C);

see also 28 U.S.C. § 636(b)(1)(B), (C); and Fed. R. Civ. P. 72(b).   After careful consideration of

all issues raised by Plaintiff, it is the opinion of the undersigned that Plaintiff's claims against some

of the Defendants should be dismissed.

I.       BACKGROUND

Plaintiff, an inmate of the federal Bureau of Prisons ("BOP"), names five Defendants in this

action:  Dr. Jones, a doctor at the Federal Correctional Institution in Terre-Haute, Indiana ("FCI

Terre Haute"); Ms. Pelt, Medical Director at the Federal Correctional Institution in Marianna,

Florida ("FCI Marianna"); Ms. Thorp, Assistant Medical Director at FCI Marianna; Ms. Gardner,

a Physician's Assistant at FCI Marianna; and Connie Copeland, a Counselor at FCI Marianna (doc.

25 at 1–3).[1]  Plaintiff alleges he was transferred to FCI Terre Haute on February 25, 2010 (id. at 10).

---

[1] The page references used in this Report and Recommendation reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

He alleges on March 25, 2010, the Utilization Review Committee ("URC") at FCI Terre Haute approved and scheduled a surgical consultation with an off-site specialist for a very painful frontal hernia (*id.*).  However, on June 10, 2010, Dr. Jones and the URC denied the consultation until Plaintiff lost weight (*id.* at 7, 10–11).  Plaintiff alleges Dr. Jones advised him the surgery would be rescheduled when he lost weight, and Jones approved and scheduled a consultation with a dietician (*id.*).  Plaintiff alleges on July 9, 2010, he filed an informal grievance stating his hernia was as big as a softball, and he wanted surgery and pain medication (*id.* at 11).  He alleges a physician's assistant at FCI Terre Haute denied the grievance, stating there was nothing that could be done (*id.*).  Plaintiff alleges on August 6, 2010, he sent a "cop-out" to Dr. Jones telling him that if he wanted Plaintiff to lose weight, he could (1) place him on a "common fare" or "healthy living" diet, (2) allow Plaintiff to refuse to eat and be force-fed through a tube after going to the special housing unit, or (3) be the subject of a grievance for deliberate indifference and medical neglect (*id.* at 12).  Plaintiff alleges Dr. Jones responded that if Plaintiff wanted help, he should ask for it instead of making threats (*id.*).  Dr. Jones additionally responded that he recommended the "healthy living" diet, and would recommend that Plaintiff receive a consultation with a dietary consultant (*id.*).  Plaintiff alleges he received a CAT scan on August 15, 2010, which showed "not strangulated," but "fatty replacement of hepatic parenchyma . . . , along with diverticulosis of sigmoid" (*id.* at 11).  Plaintiff alleges on September 15, 2010,  Dr. Pankaj Petvari diagnosed a frontal abdominal hernia (*id.*).  He alleges on September 22, 2010, he told Dr. Jones that he was approved for surgery, but Dr. Jones told him he was not approved, and that weight loss was required before he would receive surgery (*id.*).  Plaintiff alleges on January 6, 2011, his medical file was presented to the URC for review, but surgery was denied (*id.*).[2]

Plaintiff alleges on May 13, 2011, he was transferred to FCI Marianna (doc. 25 at 12).  He alleges he was scheduled to see PA Gardner on July 27, 2011, at 10:00 a.m., but she took so long with other patients that he returned to his housing unit at 3:20 p.m. without seeing her (*id.*).  Plaintiff alleges Gardner later told him she would reschedule his appointment as soon as possible to discuss

---

[2] Although Plaintiff's complaint alleges this occurred on "1/6/2010" (*see* doc. 25 at 12), the court assumes he meant January 6, <u>2011</u>, since he alleges he was not housed at FCI Terre Haute in January 2010 (he alleges he was transferred there on February 25, 2010).

his request for a CAT scan (*id.*). Plaintiff alleges on September 29, 2011, PA Gardner submitted a request to the URC for a CAT scan, but the URC disapproved it as not medically necessary (*id.* at 13). Plaintiff alleges on October 18, 2011, he sent a "cop-out" to PA Gardner informing her that the abdominal bulge was extremely painful and increasing in size (*id.* at 12). He alleges on February 22, 2012, he filed an informal grievance against the medical directors and medical staff regarding their failure to provide surgery for his extremely painful hernia (*id.* at 13). He alleges Counselor Copeland advised him he was approved for surgery (*id.* at 6, 13). He alleges on March 15, 2012, Assistant Medical Director Ms. Thorp met with him and advised him that surgery was scheduled for a date in the near future (*id.*). Plaintiff alleges on May 13, 2012, he had a surgical consultation with Dr. Teresa Goodpaster, an off-site surgeon, but she declined to perform surgery because he had an upper respiratory infection (*id.* at 7–8, 13–14). Plaintiff alleges Dr. Goodpaster's diagnosis and recommendations were the following: (1) she recommended elective laparoscopic repair of the hernia, (2) she diagnosed him as overweight, and recommended that he lose 50 pounds, but indicated that surgery did not necessarily need to be withheld due to his weight, (3) she diagnosed him with an active upper respiratory infection, and strongly recommended that he seek medical assistance at the institution, and (4) she stated she could not schedule surgery for at least three weeks, but could see Plaintiff in one month to confirm that the respiratory infection had resolved and then reschedule surgery (*id.* at 7–8, 13–14). Plaintiff alleges Medical Director Pelt and Assistant Medical Director Thorp failed to return him to Dr. Goodpaster within one month, even though her recommendation was in his medical file (*id.* at 6–7, 14). He alleges PA Gardner refused to schedule an appointment to evaluate or treat his upper respiratory infection, and he had to suffer with it until it resolved itself (*id.* at 14). He alleges even after the infection resolved itself, he did not receive surgery until April 29, 2013 (*id.* at 8, 14, 15).

Plaintiff claims that Defendants' delay in providing surgery for his hernia caused intense pain (a "9" on a scale of "1 to 10") and worsening of his condition from February of 2010 to April of 2013 (doc. 25 at 15). He alleges he suffered excruciating pain for extended periods of time, especially when he had bowel movements, because he was unable to use his abdominal muscles (*id.*). He alleges he also experienced pain when he slept on his stomach (*id.*). Plaintiff contends the delay in surgery violated BOP policy regarding the provision of health care to inmates, and

constituted deliberate indifference to his serious medical need, in violation of the Eighth Amendment (*id.* at 9). He also claims Defendants' conduct violated the Patient Protection and Affordable Care Act ("PPACA"), Pub. L. 111-148, § 104, 124 Stat. 119 (*id.*). As relief, he seeks monetary damages in a total amount of $2,850,000.00 (*id.*).

## II.     APPLICABLE LEGAL STANDARDS

### A.     Screening under 28 U.S.C. § 1915(e)(2)(B)

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *See* Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. *See* Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim

"are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

 B. Deliberate Indifference to Serious Medical Needs

Prison officials violate the Constitution when they act with deliberate indifference to an inmate's serious medical needs. *See* Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). To prevail on a claim of deliberate indifference, a plaintiff must show (1) a serious medical need; (2) deliberate indifference to that need on the part of the defendant; and (3) causation between the defendant's indifference and the plaintiff's injury. *See* Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307 (quotation omitted). Alternatively, a plaintiff can establish a serious medical need by showing that a delay in treatment worsened his or her condition. *Id.*

To establish deliberate indifference, a plaintiff must show "(1) a subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goodman v. Kimbrough, 718 F.3d 1325, 1331–32 (11th Cir. 2013) (internal quotation marks omitted). Indeed, to show deliberate indifference, the defendant's response to the medical must be more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted). Conduct that is more than mere negligence includes: (1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment

for non-medical reasons; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all. *See* McElliott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). A simple difference in medical opinion between the medical staff and an inmate as to the latter's diagnosis or course of treatment does not establish deliberate indifference. *See* Adams v. Poag, 61 F. 3d 1537, 1545 (11th Cir. 1995) (the question of whether a plaintiff should have received different diagnostic tests or treatments is not an appropriate basis for grounding liability on a deliberate-indifference claim); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

    C.    Supervisory Liability

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *See* Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Under Iqbal, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*, 556 U.S. at 677. "[S]upervisors are liable under [section] 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)). Facts sufficient to establish a causal connection include those "which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Keating, 598 F.3d at 762 (internal quotation omitted). The factual allegations of the complaint must plausibly show that the supervisory official acted with the same mental state required to establish a constitutional violation against his subordinate. *See* Franklin v. Curry, 738 F.3d 1246, 1249–51 & n.7 (11th Cir. 2013) (in analyzing plaintiff's claims against supervisory defendants, district court must first identify the precise constitutional violation charged and explain the elements of that particular violation, for example, deliberate indifference or other mens rea; second, the district court must weed out

conclusory allegations and determine whether the facts alleged enable the court to draw the reasonable inference that the supervisor is liable for the alleged misconduct); *see also* <u>Maxwell v. Cnty. of San Diego</u>, 708 F.3d 1075, 1097 (9th Cir. 2013) ("To bring a § 1983 action against a supervisor, the plaintiff must show: (1) the supervisor breached a legal duty to the plaintiff; (2) the breach of duty was 'the proximate cause' of the plaintiff's constitutional injury, and (3) the supervisor had at least the same level of mens rea in carrying out his superintendent responsibilities as would be required for a direct violation of the plaintiff's constitutional rights . . .") (citing <u>Iqbal</u>, 129 S. Ct. at 1949); <u>Dodds v. Richardson</u>, 614 F.3d 1185, 1204 (10th Cir. 2010) (after <u>Iqbal</u>, "[a] plaintiff may [ ] succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."); <u>Whitson v. Stone Cnty. Jail</u>, 602 F.3d 920, 928 (8th Cir. 2010) (after <u>Iqbal</u>, a supervisory defendant is liable only if he or she personally displayed the same mental state required to establish a constitutional violation by his or her subordinate). Filing a grievance with a supervisory person does not, alone, make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. *See* <u>Gallagher v. Shelton</u>, 587 F.3d 1063, 1069 (10th Cir. 2009); <u>Grinter v. Knight</u>, 532 F.3d 567, 576 (6th Cir. 2008); <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999); *see also* <u>Lomholt v. Holder</u>, 287 F.3d 683, 683 (8th Cir. 2002) (defendants' denial of plaintiff's grievances did not state a substantive constitutional claim).

III.    ANALYSIS

   A.    <u>Eighth Amendment Claims Against FCI Marianna Defendants</u>

   The court previously advised Plaintiff that his factual allegations were insufficient to state a plausible Eighth Amendment claim against Defendants Pelt, Thorp, Gardner, and Copeland, and the court provided Plaintiff an opportunity to amend his complaint with facts sufficient to state a plausible claim (*see* doc. 21). Despite the court's advisory and opportunity to amend, the allegations of his Third Amended Complaint still fail to state a plausible Eighth Amendment claim against the FCI Marianna Defendants.

With regard to PA Gardner, Plaintiff alleges she "did nothing to assist in corrective surgery," and he alleges Gardner and Medical Director Pelt lied to him by telling him that his weight was a legitimate medical reason for delaying the hernia surgery. However, it is clear from Plaintiff's allegations that the Utilization Review Committee, not Medical Director Pelt or PA Gardner, was the decision maker with regard to whether and when Plaintiff received surgery. To the extent Plaintiff seeks to hold Pelt and Gardner liable for failing to assist him in losing weight, he does not allege he asked either Defendant for medical assistance with losing weight, or that either Defendant was aware of facts suggesting Plaintiff was unable to lose weight on his own without medical assistance. Further, despite Plaintiff's assertion that PA Gardner "did nothing," the facts demonstrate she responded to his requests for treatment to the extent she could, by rescheduling the appointment he missed in July of 2011, and requesting a CAT scan for him in September of 2011 (which the URC denied).

With regard to Assistant Medical Director Thorp and Counselor Copeland, Plaintiff complains they "lied" to him in February and March of 2012, by telling him that his upcoming appointment with Dr. Goodpaster was for actual surgery, not just a pre-surgery consultation. However, even if Plaintiff's allegation was sufficient to suggest they deliberately misled him as to the nature of the appointment, he does not allege facts suggesting it had any effect on the timing of his surgery. Plaintiff admits that he saw the surgeon on May 13, 2012, and that she delayed the surgery due to his respiratory infection.

Plaintiff contends Defendants Gardner, Pelt and Thorp were deliberately indifferent by failing to return him to Dr. Goodpaster within thirty days or otherwise follow-up on her recommendation for treatment of his respiratory infection. With regard to Gardner, Plaintiff alleges she refused to schedule him for an appointment to evaluate or treat the respiratory infection. However, Plaintiff alleges no facts suggesting Gardner subjectively knew that her failure to treat the infection posed a risk of serious harm to Plaintiff's health. Further, Plaintiff admits the infection resolved itself without medical intervention. With regard to Medical Director Pelt and Assistant Medical Director Thorp, Plaintiff does not allege facts suggesting either Defendant was subjectively aware of his need for treatment of the respiratory infection. That Pelt or Thorp "should have known" of Dr. Goodpaster's diagnosis and recommendations by virtue of the fact that it was

included in his medical file does not state a plausible claim of deliberate indifference.  *See* Franklin, 738 F.3d at 1249 (holding that district court erred by finding that allegations that Defendants "knew or should have known" of a substantial risk of serious harm were sufficient to state a deliberate indifference claim—deliberate indifference requires more than constructive knowledge).  At most, Plaintiff's factual allegations concerning the medical directors' failure to proactively monitor his respiratory condition suggests negligence, not deliberate indifference.

Despite the court's advising Plaintiff of the Eighth Amendment standard and providing him an opportunity to amend his factual allegations to state a plausible claim, he has failed to do so. Therefore, his Eighth Amendment claims against Defendants Pelt, Thorp, Gardner, and Copeland should be dismissed.

B.    Claims Under the PPACA

In the Statement of Claims section of Plaintiff's complaint, he lists the PPACA as a federal law which Defendants violated (doc. 25 at 9).  However, he does not identify any specific provision of the PPACA that Defendants allegedly violated, nor does he otherwise allege how any Defendant's conduct violated the PPACA.  Plaintiff has the burden to state how a Defendant's act or failure to act violated the PPACA.  Even though Plaintiff is proceeding pro se, it is not the court's responsibility or obligation to scour the numerous provisions of the PPACA to divine a violation. Therefore, Plaintiff's claims against Defendant under the PPACA should be dismissed for failure to state a claim.

C.    Eighth Amendment Claim Against FCI Terre Haute Defendant (Dr. Jones)

In light of the undersigned's recommendations that Plaintiff' claims against Defendants Thorp, Pelt, Gardner, and Copeland be dismissed, the undersigned additionally recommends that this case be transferred to the Southern District of Indiana for disposition of Plaintiff's Eighth Amendment claim against the only remaining Defendant, Dr. Jones, pursuant to 28 U.S.C. § 1404(a).[3]  A district court may transfer any case to any other district where the case originally may

---

[3] As explained in Dubin v. United States, 380 F.2d 813, 816 (5th Cir. 1967), "[i]n substance, § 1404 is the statutory enactment of the doctrine of forum non conveniens tempered to allow transfer rather than dismissal.  By contrast, § 1406 operates in cases where the first forum chosen is improper in the sense that the litigation may not proceed there."

have been brought. 28 U.S.C. § 1404(a). To transfer an action under section 1404(a) the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties. *See* Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). The court's consideration of the § 1404(a) factors may include such criteria as the plaintiff's initial choice of forum, the convenience of the parties, the convenience of the witnesses, the relative ease of access to sources of proof, the location of relevant documents, the availability of compulsory process for witnesses, the financial ability to bear the cost of the change, and trial efficiency. *See* Tampa Bay Storm, Inc. v. Arena Football League, Inc., 932 F. Supp. 281, 282 (M.D. Fla. 1996). Federal courts ordinarily accord deference to a plaintiff's choice of forum.

The decision to transfer an action pursuant to § 1404(a) is left to the "sound discretion of the district court and [is] reviewable only for an abuse of that discretion." Roofing & Sheeting Metal Serv. v. La Quinta Motor Inns, 689 F.2d. 982, 985 (11th Cir. 1982); *see also* Brown v. Conn. Gen. Life Ins. Co., 934 F.2d 1193, 1197 (11th Cir. 1991). Such transfers may be made sua sponte by the district court. Mills v. Beech Aircraft Corp., 886 F.2d 758, 761 (5th Cir. 1989); Robinson v. Madison, 752 F. Supp. 842, 846 (N.D. Ill. 1990) ("A court's authority to transfer cases under § 1404(a) does not depend upon the motion, stipulation or consent of the parties to the litigation."); Empire Gas Corp. v. True Value Gas of Florida, Inc., 702 F. Supp. 783, 784 (W.D. Mo. 1989); *accord* Roofing & Sheeting, 689 F.2d at 991 n.14.

In this case, analysis of the relevant factors leads the undersigned to conclude that they favor transfer. The convenience of the parties weighs in favor of transfer to the Southern District of Indiana, since the only remaining Defendant is located there and Plaintiff is no longer located in Florida (in May of 2014, he was transferred to a federal institution in Virginia (*see* doc. 24)). As to convenience of witnesses and the availability of compulsory process for witnesses, it appears that most of the witnesses are located in the Southern District of Indiana. Additionally, sources of proof would be more readily accessible in the Southern District of Indiana, since the events underlying the remaining claim occurred there. Finally, transferring venue to the Southern District of Indiana would result in no additional financial cost to the parties. Therefore, consideration of the relevant factors leads the undersigned to conclude that this action should be transferred to the United States

District Court for the Southern District of Indiana for disposition of Plaintiff's Eighth Amendment claim against Dr. Jones.

IV.     CONCLUSION

For the foregoing reasons, the undersigned recommends that Plaintiff's claims against Defendants Thorp, Pelt, Gardner, and Copeland under the Eighth Amendment and the PPACA be dismissed, pursuant to Section 1915(e)(2)(b)(ii), for failure to state a claim, and those Defendants be dismissed from this action.  The undersigned also recommends that Plaintiff's claim against Defendant Jones under the PPACA be dismissed, pursuant to Section 1915(e)(2)(b)(ii), for failure to state a claim.  Finally, the undersigned recommends that this case be transferred to the United States District Court for the Southern District of Indiana for disposition of Plaintiff's Eighth Amendment claim against Dr. Jones.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Plaintiff's claims against Defendants Thorp, Pelt, Copeland, and Gardner be **DISMISSED**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted.

2.      That Defendants Thorp, Pelt, Copeland, and Gardner be **DISMISSED** from this action.

3.      That Plaintiff's claim against Defendant Dr. Jones under the Patient Protection and Affordable Care Act be **DISMISSED**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted.

4.      That the clerk **TRANSFER** this case to the United States District Court for the Southern District of Indiana for disposition of Plaintiff's Eighth Amendment claim against Defendant Dr. Jones.

5.      That the clerk be directed to close this case.

At Pensacola, Florida this 19th day of August 2014.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; **United States v. Roberts**, 858 F.2d 698, 701 (11th Cir. 1988).